UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


AMICA MUTUAL INSURANCE COMPANY,

     Plaintiff,

v.                                      CASE NO: 8:12-cv-511-T-26TBM

SAYEEDA QUADE, as the Personal Representative
of the Estate of Shawn R. Quade,

     Defendant.

_____/


**O R D E R**

Before the Court is Defendant's Motion to Dismiss Premature Suit for Declaratory

Relief (Dkt. 27), and Plaintiff's Response. (Dkt. 32).  After careful consideration of the

submissions of the parties, the applicable law, and the file, the Court concludes that the

motion should be denied.

**PARTIES**

On March 6, 2011, Sayeeda Quade was driving her automobile insured by Amica

Mutual Insurance Company (Amica).  Her husband Shawn R. Quade was a passenger

riding in the front seat.  While traveling west in the westbound lanes of State Road 60, a

drunk driver heading east in the westbound lanes hit them head-on, resulting in bodily

injuries to Sayeeda Quade.  The accident killed Shawn Quade.  Amica's policy provided

$100,000 in liability per person in uninsured/underinsured motorist (UM) coverage.  After

the accident, Sayeeda Quade secured an attorney who represented her individual claim

and represents her now in the wrongful death action she filed in Florida state court in

early 2012.

## ARGUMENT

The underlying insurance dispute in state court involves the amount of UM

liability owed to an insured, the estate of Shawn R. Quade.[1]  Amica brings this action for

---

[1]   While the record is not completely clear, it appears that Sayeeda Quade
previously received $100,000 individually, as opposed to a survivor, for her injuries in the
accident.  In reaching this conclusion, the Court relies on the following portions of the
record.  Amica's counsel wrote to Sayeeda Quade's counsel that "[s]ince your client
already received $100,000 in UM benefits from Amica, and the estate will be receiving
another $100,000, .  .  ." See docket 27-3 (p. 11 of 15).  In the same letter, Amica
specifically referenced Sayeeda Quade's individual claim, stating "you can certainly
cash/deposit that UM check since the concerns regarding whether to set up an Estate of
Shawn Quade, should not inhibit the settlement of her individual, bodily injury, claim."
See docket 27-3 (pp. 11-12 of 15).  Counsel for Sayeeda Quade asserted in the motion to
dismiss presently before this Court that "[a]lthough Amica Mutual paid Quade policy
limits of $100,000 to compensate for the personal injuries she suffered in the accident,
Amica Mutual and Quade disputed the insurer's contractual obligations in resolving
Quade's claim on behalf of her deceased husband." See docket 27, p. 2.  The complaint
in this case also parenthetically alleges that "Sayeeda Quade, individually" was
represented for her own bodily injuries suffered in the accident, indicating that no
problems arose with the payment of her UM benefits. See docket 1, para. 10.  Finally, the
transmittal letter from Amica with the $100,000 check made payable to the law firm
designated the check "for your client, Shawn R. Quade." See docket 1, Exh. D.
   In any event, the Court understands that this dispute involves only the $100,000
policy limit with respect to the estate of Shawn Quade, which Amica has tendered to
counsel and counsel has neither deposited nor returned. See docket 32, Exh. D p. 10,
transcript of status hearing held August 2, 2012 ("We have paid — counsel still has the
$100,000 check that we paid him long ago when he first requested it.  He still has it, I
guess he hasn't put it in his trust account yet, so there has been a payment of policy
benefits.  There's no question that there's coverage, there's no question that the claim is
worth the $100,000.").

declaratory relief based on diversity jurisdiction and requests this Court find the

following: (1) Amica could require a particular condition, i.e., the appointment of a

personal representative, in the resolution of a UM claim; (2) the violations listed in the

Civil Remedy Notice filed with the state of Florida by Sayeeda Quade as prospective

personal representative of the estate were not "bad faith" violations, or, if so, the

violations were cured by Amica; and (3) Amica did not commit bad faith.  The insured

seeks dismissal of this action as premature, arguing that the final determination of the

amount of Amica's liability to the estate is yet to be determined by the state court and

therefore any bad-faith claim has not yet accrued.

## PERTINENT ALLEGATIONS

A couple of months after the accident on May 5, 2011, Sayeeda Quade's attorney

wrote Amica that "[a]s to Shawn Quade an estate is to be open in the future when Ms.

Quade is up to this procedure but at this time please issue check to [the law firm]."[2]  On

May 10, 2011, Amica sent a check for $100,000 in UM benefits for Shawn Quade,

deceased, made payable to the law firm, which the law firm has neither deposited nor

returned.[3]  In the letter, Amica confirmed that "an estate will be set up and a personal

representative appointed, assumed to be Sayeeda A. Quade, Shawn's wife, when she is

ready."  The letter continued, "The personal representative will administer the estate and

---

[2]  See docket 1, Exh.  C.

[3]  See docket 1, Exh. D.

sign the proposed release when authorized by the court and returned to Amica in the enclosed envelope."

Rather than opening up an estate, on May 26, 2011, "Sayeeda Quade, as Prospective Personal Representative of the Estate of Shawn R. Quade" filed a "Civil Remedy Notice of Insurer Violations" against Amica with the Florida Department of Finances.[4]  The notice cited, among other things, violations such as "requiring the insured to fulfill terms and conditions that are not contracted for in the policy or mandated by statute[,] requiring an estate to be in place before disbursement of settlement proceeds[,] and requiring the execution of a release where one is not required by the policy or by statute."  On June 23, 2011, Amica's counsel delivered to Sayeeda Quade's counsel a letter addressing the violations.[5]  Counsel exchanged additional correspondence in which counsel for Quade informed Amica that she did not bear the burden of opening an estate.[6]  Nevertheless, Sayeeda Quade opened an estate for her late husband.

On December 19, 2011, the state probate judge signed an order making Sayeeda Quade the personal representative of the estate of Shawn Quade, deceased.[7]  Sayeeda Quade as personal representative of the estate filed a two-count complaint some time in

---

[4]  See docket 27-4 (pp. 35-37), Exh. C to state court complaint.

[5]  See docket 27-3 (pp. 6-7 of 15), Exh. 1.

[6]  See docket 27-3 (p. 10 of 15), Exh. 1.

[7]  See docket 27-4 (p. 8 of 21), Exh. A to state court complaint and docket 1, Exh. A.

early 2012, demanding judgment against the drunk driver for negligence and against

Amica for UM benefits.[8]  The complaint contained vague allegations of first-party bad

faith on the part of Amica.  Amica filed a motion to dismiss and counterclaim on

February 8, 2012.[9]  On February 16, 2012, Amica voluntarily dismissed its

counterclaim.[10]  Amica filed this action on March 8, 2012.

The state court complaint was amended in June 2012 after the state court granted

the motion to dismiss.[11]  The operative state court amended complaint alleges that

"Sayeeda Quade, and Amica Mutual Insurance Company were unable to reach an

amicable resolution wherein there remains a dispute as to the extent of benefits Plaintiff is

entitled to recover as an insured for uninsured motorist benefits and a survivor under the

Florida Wrongful Death Statute."[12]  The amended complaint further alleges that Amica

has failed to tender the full available policy benefit "to the surviving spouse . . . as a

consequence of the damages she has sustained as a survivor under the Florida Wrongful

Death Statute."[13]  Sayeeda Quade seeks damages against Amica "to which Plaintiff, the

---

[8]  See docket 27-1 (pp. 1-25).

[9]  See docket 27-3 (pp. 1-15).

[10]  See docket 1, Exh. 11.

[11]  See docket 27-4 (pp. 1-21) & docket 27-5 (pp. 1-37).

[12]  See docket 27-4 (p. 3 of 21), para. 21.

[13]  See docket 27-4 (p. 6 of 21), para. 36.

survivors, or the decedent's estate are entitled."[14]  The amended complaint makes no

mention of Amica's requirement that an estate be opened for Shawn Quade.[15]  Amica

again sought to dismiss the amended complaint based on the improper and confusing

allegations for individual claims on behalf of Sayeeda Quade and first-party, statutory

bad-faith claims, intertwined with routine UM wrongful death allegations.  The motion to

dismiss remains pending in state court.

**BAD FAITH—RIPENESS**

Counsel for Quade seeks to dismiss this case on the sole ground that any first-

party, statutory bad-faith claim has not yet accrued because the state case to determine the

amount of UM liability is still pending.  He even goes so far as to say that his state court

complaint does not seek damages for bad-faith practice.  Relying on Blanchard v. State

Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla. 1991), and Sabatula v. State Farm

Mut. Ins. Co., 2011 WL 4345302 (M.D. Fla. 2011), he argues that there has not been a

"determination of liability and extent of damages on the insurance contract."  Sabatula,

2011 WL 4345302, at *4; see also Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275 (Fla.

2000).

---

[14]   See docket 27-4 (p. 6 of 21), wherefore clause.

[15]   In Florida, the appointment of a personal representative is necessary to bring an action for wrongful death.  768.20, Fla. Stat. (2011) (requiring that a wrongful death "action shall be brought by the decedent's personal representative").

Amica asserts, as it did at a prior hearing before this Court,[16] that a determination

of liability may be satisfied by the payment of the policy limits to an insured.  See Allstate

Ins. Co. v. Clohessy, 32 F.Supp.2d 1328 (M.D. Fla. 1998).  In Clohessy, the insurer paid

the per-person policy limit, and the court reasoned that the payment satisfied the

requirement that there be a determination of damages as a result of the tortfeasor's

negligence pursuant to Blanchard.  The Court reasoned that because Florida law does not

require a prior judgment as a condition precedent to bringing a first-party bad-faith claim,

the payment of the $200,000 per-person policy limits constituted the "functional

equivalent" of a determination of the insured's damages.  As noted by Amica, the

Sabatula court cited Clohessy with approval.  Sabatula, 2011 WL 4345302, at *4.  This

Court need not decide, however, the issue of whether the bad-faith claim is ripe because it

determines that it has subject matter jurisdiction and is therefore free to exercise its

---

[16]   At the hearing, counsel for Amica argued:

> And so, under Vest and the cases interpreting it, there's
> always been kind of a gray area with regard to what happens
> when the insurance company says, okay, there's coverage,
> they belatedly pay the policy limits and then there's a question
> as to whether the bad-faith case is ripe or not.

See docket 32, Exh. D p. 10.

discretion to enter declaratory relief of the issue of whether Amica could require Sayeeda

Quade to open up an estate for her deceased husband.[17]

### CONDITION OF APPOINTING PERSONAL REPRESENTATIVE

Amica contends that this Court has subject matter jurisdiction over a "case or

controversy" arising out of Amica's condition that Quade seek the appointment of a

personal representative to protect Amica from the potential claims of survivors if the

policy limits had been paid to Sayeeda Quade individually. Generally, insurance coverage

disputes and questions about the rights and duties of the insurer and insured provide a

case or controversy for purposes of the Declaratory Judgment Act.  See, e.g., Federated

Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805 (11th Cir. 2003).[18]  As noted by

Amica, a resolution of the personal representative issue does not mean the bad-faith claim

will be addressed prematurely.  See Principal Life Ins. Co. v. Alavarez, 2011 WL

4102327, at *4-5 (S.D. Fla. 2011) (reasoning that resolution of coverage claim finding no

coverage and thereby negating any bad-faith claim, is not prematurely addressing bad

faith).[19]  The issue of the appointment of the personal representative is not before the state

---

[17]   Even if this Court did determine that the bad-faith claim was premature, the Court would choose under the circumstances of this case to abate rather than dismiss the action.  See Demott v. Liberty Mut. Fire Ins. Co., 2008 WL 2359923 (M.D. Fla. Jun. 5, 2008).

[18]   See also 10B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 2760 (3d ed. 1998).

[19]   Counsel for Amica maintained the distinction between requiring a personal representative be appointed and requiring a determination of whether Amica acted in bad

court, and the fact that a case is pending in state court does not "mean the doors of the

federal courts are automatically closed," thereby precluding this Court from exercising its

discretion to afford declaratory relief.  Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330,

1333 (11th Cir. 1989), abrogated on other grounds, Wilton v. Seven Falls Co., 515 U.S.

277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).  The issue of whether Florida law requires

the appointment of a personal representative to receive UM benefits and the issue of who

should bear the burden of that condition are ones, although perhaps not expressly

provided as conditions in the insurance policy, that warrant resolution.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to

Dismiss Premature Suit for Declaratory Relief (Dkt. 27) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on September 17, 2012.


          s/*Richard A. Lazzara*
          **RICHARD A. LAZZARA**
          **UNITED STATES DISTRICT JUDGE**

---

faith as follows:

> But once again, the Court's decision on the personal
> representative issue will decide the bad-faith issue.  We don't
> actually need a bad-faith decision from this Court.  What
> we're mainly looking for is a decision as to whether it's
> acceptable for Amica to request a personal representative be
> appointed.  That's the issue.  That is not the issue in the state
> court action.  State court action is simply a UM claim.

See docket 32, Exh. D p. 10.

**COPIES FURNISHED TO**:
Counsel of Record